```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

INTERNATIONAL MARINE, L.L.C.    *           CIVIL ACTION
AND INTERNATIONAL OFFSHORE
SERVICES, L.L.C.

VERSUS                          *           NO: 10-0044

DELTA TOWING, L.L.C.            *           SECTION: "D"(2)
```

## ORDER AND REASONS

Before the court are the following motions:

(1) **Motion for Summary Judgment (Doc. No. 24)** filed by Plaintiffs, International Marine, L.L.C. and International Offshore Services, L.L.C.; and

(2) **Cross Motion for Summary Judgment (Doc. No. 30)** filed by Defendant, Delta Towing, L.L.C.

The motions, set for hearing on Wednesday, December 1, 2010, are before the court on briefs, without oral argument. Now, Having considered the memoranda of counsel, the record, and the applicable law, the court finds that at this juncture, there are genuine issues of material fact and the motions should be denied.

Pursuant to a "Vessel Sales Agreement" (VSA), Delta Towing sold to Plaintiff International Marine two vessels, the DELTA TEAM

and DELTA SKIPPER, for a total purchase price of $4,000,000. (*See* Vessel Sales Agreement attached to Complaint, at §2).

The VSA contains a miscellaneous provision, entitled "Covenant Regarding Name/Use of Vessels/Hiring Crew" and it provides in pertinent part:

> 11. *Miscellaneous*
>
> . . .
>
> F. <u>Covenant Regarding Name/Use of Vessels/Hiring of Crews</u>. Buyer represents that it is purchasing the Vessels for use with Buyer's owned or chartered equipment in support of Buyer's internal operations. Inasmuch, Buyer covenants and agrees that neither it or any of its affiliated companies will charter out or enter into towing contrasts or otherwise utilize or permit anyone else to utilize the Vessels for hire (collectively "Charters Out") in the inland and offshore waters of the U.S. Gulf of Mexico and the state and federal waters adjacent thereto (the "Covered Trade") for a period of five (5) years from the date of this Agreement (the "Covered Term"). Notwithstanding the foregoing, in the event Buyer or its affiliated companies wish to Charter Out either or both Vessels in the Covered Trade during all or part of the Covered Term, Buyer shall be obliged to time charter the applicable Vessels to Seller for Seller to enter into Charters Out with customers acceptable to Seller (the "Customer Charterers"). Such chartering in and chartering out shall be on essentially back-to-back terms and condition except that charter hire payable to Buyer by Seller shall be an amount equal to 90% of the gross charter hire actually received by Seller from the Customers Charterers under such Charters Out

> and shall be due and payable to Buyer within fifteen (15) days after receipt of such charter hire by Seller. **If Seller is unable to secure Charters Out for the Vessels within a reasonable time of the Vessels becoming available, Buyer may Charter Out either or both of the Vessels at fair market rates directly to Custom Charterers for use in the Covered Trade during all or part of the Covered Term, but Buyer shall pay to Seller as compensation therefore an amount equal to 10% of the gross charter hire actually received by Buyer from Custom Charterers under such direct Charters Out and shall be due and payable to Seller within fifteen (15) days after receipt of such charter hire by Buyer...Buyer covenants and agrees to make the provisions of the paragraph 11F and paragraph 11G hereof a term and condition of any future sales of and Bills of Sales for the Vessels.**

(*See* VSA, ¶11F, emphasis added).

The VSA also provides for liquidated damages in the very next paragraph (Paragraph 11G) which states in pertinent part:

> G. <u>Liquidated Damages</u>. **The consideration for the provisions in paragraph 11F and this paragraph 11G is that the above Purchase Price is below the fair market price of the Vessels at the time of sale and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged and confessed.** In the event Buyer or its affiliated companies or any subsequent owner, manager, or charterer of the Vessels violates any of the covenants and agreements in paragraph 11F, Buyer shall pay to Seller as **liquidated damages, and not as a penalty**, the greater of (I) the sum of **Two Hundred Fifty Thousand and no/100 ($250,000.00) per incident or occurrence** or (ii) if the applicable the

>   gross amount of revenue earned in violation of such covenant and agreement with respect to the incident or occurrence in question ....

(*Id*. at Paragraph 11G, emphasis added).

In Paragraph 11(H), the VSA provides:

>   H.   <u>Incidental and Consequential Damages</u>.  In no event shall wither Seller or Buyer be liable to the other for loss of profit, loss of use or business, business interruptions, delay or interference with the performance of other contracts, or special, indirect, incidental, or consequential damages suffered by the other party resulting from or arising out of this Agreement, however same may be caused.

(VSA at ¶11(H)).

On January 7, 2010, Plaintiffs filed its Declaratory Judgment Complaint under the court's admiralty and maritime jurisdiction, and alleges in part:

>   4.3 Subsequent to the sale of the vessels, the present dispute arose wherein Defendant alleges Plaintiffs breached the chartering provisions of the agreement. Defendant claims that for the alleged breach of failure to pay 10% of charter hire, it is entitled to a liquidated damage penalty of two hundred fifty thousand ($250,000) for every "occurrence" in breach of the chartering agreement.
>
>   4.4 Defendant claims that it is entitled to over $9 million in penalties resulting from over thirty-six (36) alleged "occurrences" of the breach of the chartering agreement. Of these alleged "occurrences," Defendant's ten percent (10%) share of the charter hire would total approximately $90,950.33.  Plaintiffs

>have previously tendered payment of this amount in two checks, and Defendant has held these checks for over a year without negotiating either check.

(Complaint at ¶¶4.3-4.4).

In their instant **Motion for Summary Judgment**, Plaintiffs move for summary judgment declaring that: (1) Plaintiffs have not breached the chartering provision of the subject VSA; and (2) the "liquidated damages" provision contained in the VSA is an unenforceable penalty. In its **Cross Motion for Summary Judgment**, Delta moves for summary judgment ordering International Marine to pay Delta in accordance with the Liquidated Damages provision in Paragraph 11 (G) of the VSA.

Whether the subject liquidated damages is a penalty is a question of law for the court. *Farmers Export Co. v. M/V Georgi Prios, Etc.*, 799 F.2d 159, 162 (5th Cir. 1986). "In contracts cases, the goal of the law is to place the nonbreaching party in the same position in which it would have been without the breach, not to inflict a penalty." *Id*. at 163.

The Fifth Circuit instructs that:

>The *Restatement (Second) of Contracts* §356 comment b (1979), provides a two-part test to determine if stipulated damages are a penalty. The **first factor** is the anticipated or actual loss caused by the breach. The amount fixed is reasonable if it approximates the actual loss that has resulted from a particular breach, even though it may not approximate the

5

> loss that might have been anticipated under other possible situations, *or* if the breach approximates the loss anticipated at the time of making the contract, even though it does not approximate the actual loss. *Id*. The **second factor** is the difficulty of proof of loss, the more flexibility is allowed in approximating the anticipated or actual harm. *Id.*

*Farmers Export Co.,* 799 F.2d at 162 (emphasis added).

"Since damages are difficult to prove [under the second factor above], a court will be more lenient in determining whether the amount was a reasonable approximation of the anticipated loss at te time the contract was signed." *Id.* Here, Plaintiffs, who are seeking to invalidate the liquidated damages provision, have the burden to prove that it constitutes an unenforceable penalty. *Id.* In applying the Restatement, the Federal Circuit explains that this "burden [of proof] is an exacting one, because when damages are uncertain or hard to measure, it naturally follows that it is difficult to conclude that a particular liquidated damages amount or rate is an unreasonable projection of what those damages might be." *DJ Mfg. Corp. v. U.S.*, 86 F.3d 1130, 1134 (Fed. Cir. 1996), *citing Restatement (Second) of Contracts §356*.

At this juncture, the court finds that there are genuine issues of material fact as to whether the liquidated damages provision reasonably represented the anticipated damages that Delta might suffer in the event of breach of the restrictive covenants

set forth in Paragraph 11(F) of the subject VSA.  On December 6, 2010, upon Delta's *unopposed* motion for enlargement of deadlines, the court signed an order extending the pre-trial motion, discovery and deposition deadlines to January 14, 2010.  According to that motion, the parties have agreed to take the depositions of Plaintiff's and Defendant's experts commencing the week of January 3, 2011.  (Doc. No. 59-1 at p. 3).

Accordingly;

**IT IS ORDERED** that Plaintiffs' **Motion for Summary Judgment** (Doc. No. 24) and Delta's **Cross-Motion for Summary Judgment** (Doc. No.30) be and are hereby **DENIED.**

New Orleans, Louisiana, this **6th** day of **December**, **2010.**

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE