UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| INTERNATIONAL MARINE, LLC, ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-0044 |
| DELTA TOWING LLC | SECTION "L" (2) |

### ORDER & REASONS

Before the Court is Third Party Defendant Stephen Valdes' Motion to Dismiss (Rec. Doc. 241), his Motion for Summary Judgment in the Alternative (Rec. Doc. 247), and Third Party Plaintiff International Marine, LLC's and International Offshore Services, LLC's (collectively, "International Marine") Motion for Summary Judgment (Rec. Doc. 253). The Court has reviewed the briefs and applicable law, has heard oral argument, and now issues this order.

### I.    BACKGROUND

International Marine is a company that provides vessels used to assist offshore construction, exploration, and production activities. Prior to its sale, the company was owned by Valdes along with Stephen Williams, Kelly Steele, and WMW, LLC. (collectively, the "former members"). Williams held about 70%, Steele just over 5%, WMW about 20%, and Valdes 5%. In early 2009, the former members sold a controlling interest of International Marine to Ferry Holding Corporation ("FHC"). (*See* Rec. Doc. 241-2 at 59). Under the terms of the sale, the former members transferred the entire holdings of WMW, Steele, and Valdes to FHC. Williams, the former majority owner of International Marine, retained 20% of the company. The sale was effectuated through multiple documents, including a Purchase Agreement and an Assumption Agreement.

In September 2006, prior to Valdes' sale of his ownership interest in International Marine, the company's subsidiary entered into a Vessel Sales Agreement ("VSA") with Delta Towing for the purchase of two vessels. The present case arises out of the alleged breach of that agreement. Specifically, Delta Towing alleges that International Marine chartered the two vessels on multiple occasions in violation of a noncompetition clause in the VSA. Delta Towing has further asserted that each separate breach of the VSA entitled it to $250,000 in liquidated damages from International Marine. Previously, Delta Towing sought, and this Court granted, summary judgment affirming the validity of the liquidated damages provisions in the VSA. (Rec. Doc. 149). The Court certified that ruling as a partial final judgment under Federal Rule of Civil Procedure 54(b) (Rec. Doc. 163). On February 8, 2013, the United States Court of Appeals for the Fifth Circuit affirmed. (Rec. Doc. 182).

On June 26, 2013, International Marine filed a third party complaint against Valdes that asserts multiple claims. (Rec. Doc. 211). First, International Marine asserts a breach of contract claim in which it argues that pursuant to the Assumption Agreement, the former members assumed and agreed to pay International Marine's pre-closing liabilities, including any obligation to Delta Towing arising out of this case. (*Id.* at 14-15). Specifically, International Marine alleges that "[e]ach and every one of [the former members] has materially breached the Assumption Agreement by refusing to abide by their contractual obligations to assume and agree to pay . . . the Delta Towing claims." (*Id.* at 15). Second, International Marine seeks a declaration providing that "each and every one of the Former Members is directly liable to Delta Towing for the full amount and extent of [any] damages (and associated costs, interests, and attorneys' fees)" arising from International Marine's alleged breach of the VSA. (*Id.* at 15-16). International Marine bases this liability on the "Former Members' assumption of the Pre-Closing Period

2

Liabilities under the Assumption Agreement." (*Id*. at 16). Third, International Marine asserts that it is "entitled to full indemnification and reimbursement from each and every one of the former members," pursuant to the Purchase Agreement and the Assumption Agreement. (*Id*.). Last, International Marine argues that "[t]his action should proceed as if Delta Towing had sued International Marine . . . as well as Williams, Steele, Valdes and WMW." (*Id*. at 17).

Prior to filing the third party complaint, International Marine entered into a comprehensive settlement with two of the other former members, Williams and Steele, which released them from all known and unknown claims. (Rec. Doc. 241-3). Initially, International Marine disputed the extent of the release, claiming that it did not specifically address the present litigation. (*See* Rec. Doc. 211). Williams and Steele then filed a petition in the 19th Judicial District Court for the Parish of East Baton Rouge seeking enforcement of the settlement and a declaration that International Marine had released each from their obligations under the Purchase Agreement and the Assumption Agreement. (Rec. Doc. 241-4). On July 8, 2013, that court held that the settlement had in fact released Williams and Steele of all liability, specifically including that arising out of the present case. (Rec. Doc. 241-5). On July 23, 2013, International Marine dismissed its claims against Williams and Steele. (Rec. Doc. 232).

## II.   PRESENT MOTIONS

Valdes now moves to dismiss (Rec. Doc. 241) or for summary judgment, in the alternative (Rec. Doc. 247), and International Marine moves for summary judgment (Rec. Doc. 253). Each of these motions addresses the question of the extent of Valdes' liability. (Because the Court's decision with regard to the motion to dismiss is dispositive, it does not consider either of the motions for summary judgment.)

### A. Valdes' Motion to Dismiss

Valdes now moves to dismiss all claims that rest on the premise that Valdes has fully assumed any of International Marine's potential liability to Delta Towing. (Rec. Doc. 241). Specifically, Valdes states that, because he assumed only 5% of International Marine's potential liability under the relevant agreements, it would be contrary to law to require him to assume all of it. In support of his position, Valdes argues the phrase "severally and not jointly" means that his liability is limited to the extent of his ownership interest in International Marine at the time of its sale (that is, 5%). In the alternative, he contends that if he is found liable for International Marine's entire liability to Delta Towing, that would mean that the other former members would also be "jointly" liable for that entire obligation. Thus, the claims against Valdes would have to be dismissed because International Marine has, through its settlement with Williams and Steele, already released the former members' "joint" liability.

### B. International Marine's Response

In response, International Marine argues that "[t]he fact that Valdes is 'severally [and not jointly]' liable does not mean he is only obligated to pay a limited or pro rata amount of Delta Towing's damage." (Rec. Doc. 256 at 2). Instead, it argues that the distinction between "jointly and severally" and "severally and not jointly" is procedural, rather than substantive, and merely indicates that International Marine may bring an action against Valdes without joining the other former members. (It relies on *Black's Law Dictionary*, the *Restatement(Second) of Contracts*, and *Williston on Contracts*.) It further argues that neither the Purchase Agreement nor the Assumption Agreement limit Valdes' liability, because each of the former members have agreed to assume all pre-closing liabilities. It also states that because the former members did not expressly indicate their share of the liability was to be divided *pro rata*, it is presumed that they each have promised the same performance. Last, International Marine states that the release of

4

one "jointly" liable party only releases other "jointly" liable parties if the parties intended for the release to do so and if the compensation paid to the damaged party reflects that intention.

    **C.**    **Valdes' Reply**

Valdes replies that in order to reach the conclusion that he is "jointly" liable for the entire obligation International Marine owes to Delta Towing it is necessary to assume that there is no distinction between Williams, who the agreements say is "jointly and severally" liable, and Valdes, who the agreements say is "severally and not jointly" liable; it is necessary to interpret the agreements far more broadly than the law allows; it is necessary to disregard the fact that each of the former members sold their individual ownership interest in the company separately and were compensated separately; and it is necessary to ignore the fact that Delaware courts interpret "several" liability to mean "limited" liability.

**III.**    **LAW & ANALYSIS**

    **A.**    **Standard of Review**

When a court considers a motion to dismiss for a party's failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir.2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). In

making its determination, a court may consider, "documents incorporated into the complaint by reference . . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, the Purchase Agreement (*See* Rec. Doc. 211 at 4) and the Assumption Agreement (*See id.*) are incorporated into International Marine's third party complaint against Valdes,[1] and this Court may consider those documents in addition to the third party complaint itself.

This is a contract dispute governed by Delaware law.[2] Under Delaware law, the "clear and unambiguous terms" of a contract are interpreted "according to their ordinary meaning." *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012). "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Id.* (internal quotation marks omitted). Further, the contract is rendered ambiguous only if a disputed term is "fairly susceptible of different interpretations or may have two or more different meanings," not "simply because the parties do not agree upon [the contract's] proper construction." *Id.* (internal quotation marks omitted).

---

[1] In the third party complaint, International Marine noted:
> Given that no protective order has been entered in this case, [it is] withholding the filing and service of [the Purchase Agreement and Assumption Agreement] pending the parties' agreement, and this Court's approval, of a protective order. As soon as a protective order is entered, [it] will file the above-referenced exhibits under seal and serve the same on all parties entitled to notice.

Rec. Doc.211 at 3 n.1). These exhibits were eventually filed under seal by Valdes. (*See* Rec. Doc. 249).

[2] The Purchase Agreement provides:
> This Agreement and all matters arising out of or relating to this Agreement shall be governed by and construed under the laws of the State of Delaware in all respects as such laws are applied to agreements among Delaware residents entered into and performed entirely within Delaware, without giving effect to conflict of law principles thereof . . . .

(Rec. Doc. 241-2 at 51). Likewise, the Assumption Agreement provides:
> This Agreement and any of the other Assumption Documents shall be construed and enforced in accordance with and governed by the laws of the State of Delaware, without regard to principles of conflicts of law otherwise applicable to such determination.

(*Id.* at 64).

6

Using materials extrinsic to "the language of the contract to ascertain the parties intentions" is only required if a contract is rendered ambiguous. *Id.* (internal quotation marks omitted).

### B.     Agreements

The issue presented is whether Valdes is liable for 5% or 100% of International Marine's pre-closing liabilities. In ascertaining the extent of his liability, it is necessary to determine whether he and the other former members promised the same or separate performances and, if they promised the same performance, the nature of that liability (that is, whether they are "jointly," "severally," or "jointly and severally," liable for the same performance).

This analysis begins with the language of the contracts themselves. The Purchase Agreement provides:

> *Stephen J. Williams*, jointly and severally with the other Members, *and each of the Members other than Stephen J. Williams*, severally and not jointly, hereby agree to assume and be liable for, and to indemnify, defend and hold harmless the Purchaser Indemnitiees, [International Marine] against, all Losses arising out of or relating to any liability or obligation (whether absolute, accrued, contingent or otherwise, known or unknown) of the Company or any Subsidiary accrued or arising prior to the Closing or to the extent based on or caused by any act or omission occurring, or condition or circumstances existing, prior to the Closing . . . .

(Rec. Doc. 241-2 at 45) (emphasis added). Likewise, the Assumption Agreement provides:

> *Stephen J. Williams*, jointly and severally with the other Members, *and each of the Members other than Stephen J. Williams*, severally and not jointly, assume and agree to pay the Pre-Closing Period Liabilities and the Premium Liabilities.

(*Id.* at 63) (emphasis added).

Applying the Delaware contract interpretation rules described above, the Court will initially assess the nature each former member's liability, then determine whether Valdes promised the same performance as any other former member.

7

### A. Nature of Each Party's Liability

In determining the nature of Valdes' liability for the pre-closing obligations, it is necessary to also consider the nature of each former member's liability, as well. In Delaware, "[a]n obligation or written contract of several persons shall be joint and several, unless otherwise expressed." DEL. CODE ANN. tit. 6, § 2701.With respect to Williams, the presumption of "joint and several" liability is reinforced by the express language of the contracts. Accordingly, Williams is "jointly and severally" liable. Under the common law, "parties having a joint and several obligation are bound jointly as one party, and also severally as separate parties at the same time." 12 WILLISTON ON CONTRACTS § 36:1 (4th ed. 1999). *Black's Law Dictionary* further explains that "each [jointly and severally] liable party is individually responsible for the entire obligation, but a paying party may have a right of contribution and indemnity from nonpaying parties." *Liability*, BLACK'S LAW DICTIONARY (9th ed. 2009). As discussed below, "joint and several" liability pertains to promises of the same, not separate, performances. (*See infra* Part III.B). Thus, Williams is individually liable to International Marine for the performance he promised, but the other former members may later be individually liable to Williams for their part of that same performance.

Next, it is necessary to consider the nature of Valdes' and the other former members' liability for the pre-closing obligations. As noted above, "[a]n obligation or written contract of several persons shall be joint and several, unless otherwise expressed." DEL. CODE ANN. tit. 6, § 2701. The contracts here are not silent on the nature of Valdes' and the other former members' liability, nor do they expressly reinforce presumption of "joint and several" liability" as they did with regard to Williams. Instead, the contracts have expressly stated that Valdes and the others are "severally and *not* jointly" liable. The presumption is therefore rebutted and Valdes and the other former members are not "jointly and severally" liable.

8

Unlike "jointly and severally," the phrase "severally and *not* jointly" is not a term of art.[3] Accordingly, the meaning of "severally" and "not jointly" must be interpreted individually. First, the parties state that Valdes is "not jointly" liable. As *Williston on Contracts* notes, "[t]he effect of a joint obligation is that each joint promisor is liable for the whole performance jointly assumed." 12 WILLISTON ON CONTRACTS § 36:1. Likewise, *Black's Law Dictionary* defines "joint" liability as "[l]iability shared by two or more parties." Second, the parties also clearly state that Valdes is "severally" liable. *Liability*, BLACK'S LAW DICTIONARY. Again turning to *Williston on Contracts*, the effect of "several" liability is that "each party is bound separately for the performance which [that party] promises and is not bound jointly with anyone else." 12 WILLISTON ON CONTRACTS § 36:1. *Black's Law Dictionary* reinforces this, defining "several" liability as "[l]iability that is separate and distinct from another's liability . . . ." *Liability*, BLACK'S LAW DICTIONARY. Thus, the parties intent that Valdes be "severally" and "not jointly" liable indicates that he is not "liable for the whole performance jointly assumed," but instead he is "separately [liable] for the performance which [he] promise[d] and not bound jointly with anyone else." *See* 12 WILLISTON ON CONTRACTS § 36:1. Accordingly, Valdes and each of the other former members, not including Williams, are individually liable for the performance they promised, even if another of the former members promised the exact same performance.

### B.     Scope of Each Party's Liability

Having determined the nature of each former member's liability (that is, that Williams is "jointly and severally" liable for the pre-closing obligations and Valdes and the remaining former members are "severally" but "not jointly" liable), it is next necessary to determine what, exactly, Valdes is "severally" but "not jointly" liable for. In other words, whether Valdes' promised

---

[3] For instance, *Black's Law Dictionary* defines "joint and several liability," "joint liability," and "several liability," but does not define "several and not joint liability" or any similar term. *Liability*, BLACK'S LAW DICTIONARY.

performance the same as that of the other former members' promised performance. This "is entirely a question of the interpretation of the promises . . . ."[4] *Id.* § 36:2. As a general matter, "[w]here two or more parties to a contract make a promise or promises to the same promisee, the manifested intention of the parties determines whether they promise that the same performance or separate performances shall be given." RESTATEMENT (SECOND) OF CONTRACTS § 288(1); *see also* 12 WILLISTON ON CONTRACTS § 36:4. "Unless a contrary intention is manifested, a promise by two or more promisors is a promise that the same performance shall be given." RESTATEMENT (SECOND) OF CONTRACTS § 288(1). Such a manifestation exists "whether or not there are 'words of severance.'" *Id.* § 288 cmt. c. Valdes may only be held "severally" and "not jointly" liable for the performance that he promised, whether that was to shoulder all or part of the pre-closing obligations.

Here, the former members entered into a joint contractual arrangement. For this reason, there is a presumption that they promised the same performance. However, a fairly absurd result follows if the presumption is applied here. If each former owner had promised to be 100% liable for International Marine's pre-closing obligations, Williams eventually might have less liability than the other former members. As noted above, where the parties are "severally" or "jointly and severally" liable for the same performance, an action may be brought against any of them individually for the entire performance. Thus, if an action were brought against Williams, International Marine could recover 100% of a pre-closing obligation from him, then Williams could recover 30% of that from the other former members (resulting in Valdes shouldering 5%

---

[4] As the *Restatement (Second) of Contracts* provides:
> The question whether two promisors promise the same or separate performances is distinct from the question whether two promisors of the same performance are bound by 'joint' or by 'several' duties or by both, but the two questions are sometimes confused. The question what performances are promised is entirely a question of interpretation of the promises, while the distinction between 'joint' and 'several' duties is primarily remedial and procedural . . . .

RESTATEMENT (SECOND) OF CONTRACTS § 288 cmt. b.

of the pre-closing liability and Williams 70%). However, if an action were brought against Valdes, International Marine could recover 100% of the pre-closing liability from Valdes, but Valdes would be unable to recover from the other former members (resulting in Valdes bearing 100% of the pre-closing liability and Williams without any of it). It is unreasonable to assume that this was the result desired by the parties.

Additionally, the language of the contract itself suggests that the parties did not intend to promise the same performance. The Purchase Agreement expressly indicates:

> [E]ach Member, severally and not jointly, hereby agrees to sell, transfer and convey to the Company, certain membership interests in the Company . . . set forth opposite the name of such Member . . . on Exhibit A . . . for the redemption price set forth opposite such Member's name on Exhibit A.

(Rec. Doc. 241-2 at 4). The above-referenced exhibit then provides both the number of units each former member sold, transferred, and conveyed, as well as the consideration each received. In the margin, a footnote further reinforces the *pro rata* nature of each former member's promise, providing that "Each Member has authorized and instructed the Company to pay . . . such Member's pro rata portion . . . assumed by the Members pursuant to the . . . Assumption Agreement."[5] (*Id.* at 59 n.1). Accordingly, the plain language of the agreements further indicate that each of the former members promised separate performances (and received separate consideration for those performances)[6] Therefore, the presumption that each of the former

---

[5] This footnote refers to a column titled "Pro Rata Payment to Whitney Group." (*Id.* at 59). International Marine argues that this indicates that the *pro rata* division of this particular pre-closing liability "was a special case." (Rec. Doc. 256 at 5). However, the plain language of the footnote indicates otherwise.

[6] A comment to the *Restatement (Second) of Contracts* addresses a situation that is similar, if not identical, to that presented here. It states, "promises to subscribe for a common purpose sums of money set opposite the names of the promisors are ordinarily promises of separate performances." RESTATEMENT (SECOND) OF CONTRACTS § 288 cmt. c. It includes the following illustration:

> A, B and C sign a subscription contract reading "A, B and C hereby undertake to pay the following sums." Opposite the name of each signer is a separate sum.

owners promised the same performance is rebutted. The Court concludes that Valdes' is "separately" and "not jointly" liable for International Marine's potential pre-closing liability to Delta Towing only to the extent of his ownership interest at the time of the sale (that is, 5%).[7]

## IV.   CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that Valdes' Motion to Dismiss (Rec. Doc. 241) is **GRANTED** and his liability for International Marine's pre-closing liabilities is limited to his share of International Marine at the time of the sale, namely 5%.

**IT IS FURTHER ORDERED** that Valdes' Motion for Summary Judgment in the Alternative (Rec. Doc. 247) is **DENIED** as moot.

---

> Each promises only a separate performance, the payment of the sum opposite his name.

*Id.* § 288 ill. 4.

The type of scheme envisioned by the parties here relates closely to that described in a widely available treatise on acquisitions:

> The target's shareholders' representations . . . may be either *joint and several*, or *several but not joint*. If the representations . . . are several but not joint, each shareholder's liability is limited to the percentage of the aggregate liability that his or her shares bears to the target's outstanding stock on the date of the closing.
>
> The acquiring corporation usually will insist on joint and several representations to avoid instituting multiple lawsuits to satisfy the entire claim. However, if one or more small shareholders of the target are uncomfortable with the prospect of a 100% liability exposure, they may resist joint and several liability. . . . In these cases, the acquiring corporation may provide for joint and several liability for certain representations and warranties and certain parties, and several but not joint liability for other representations and other parties.

CORPORATE ACQUISITIONS, MERGERS AND DIVESTITURES § 2:27 (2013) (emphasis added). The Court finds this language persuasive.

Likewise, an analogous Delaware statute states that "[t]he aggregate liability of any stockholder of a dissolved corporation for claims against the dissolved corporation shall not exceed the amount distributed to such stockholder in dissolution." DEL. CODE ANN. tit. 8, § 282(c).

[7] It is not necessary to determine whether the parties intended for Williams to be 100% liable for all pre-closing obligations. If they had, Williams and Valdes would have promised the same performance (that is, they would both have promised to be liable for that 5% of the pre-closing obligations). This would only raise an issue if Williams alone had been sued by International Marine, because as a "jointly and severally" liable party, Williams could then be able to recover the 5% from Valdes. However, the opposite is not true. If, as here, International Marine only sought recovery of that 5% from Valdes, the "severally" liable Valdes would not be able to recover that from Williams.

**IT IS FURTHER ORDERED** that International Marine's Motion for Summary Judgment (Rec. Doc. 253) is **DENIED** as moot.

New Orleans, Louisiana, this 31st day of October, 2013.

_____
UNITED STATES DISTRICT JUDGE