UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| INTERNATIONAL MARINE, LLC, ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-0044 |
| FDT, LLC F/K/A DELTA TOWING, L.L.C., ET AL. | SECTION "L" (2) |

## ORDER AND REASONS

Before the Court are three motions: (1) a motion of International Marine, LLC and International Offshore Services, LLC (collectively, "International") for summary judgment, (Rec. Doc. 384); (2) a motion of Stephen Valdes for leave to file an amended counterclaim in interpleader, (Rec. Doc. 395); and (3) a motion of Mr. Valdes for motion for partial summary judgment, (Rec. Doc. 397). The Court has reviewed the parties' memoranda and the applicable law, and now issues this Order and Reasons.

### I.  BACKGROUND

#### A.   Factual Background

International Marine is a company that provides vessels used to assist offshore construction, exploration, and production activities. Until 2009, the company was owned by Valdes along with Stephen Williams, Kelly Steele, and WMW, LLC. (collectively, the "former members"). Williams held about 70%, Steele just over 5%, WMW about 20%, and Valdes 5%. In early 2009, the former members sold a controlling interest of International Marine to Ferry Holding Corporation ("FHC"). (*See* Rec. Doc. 241-2 at 59). Under the terms of the sale, the former members transferred the entire holdings of WMW, Steele, and Valdes to FHC. Williams, the former majority owner of International Marine, retained 20% of the company. The sale was effectuated through multiple documents, including a Purchase Agreement and an Assumption Agreement.

In September 2006, prior to Valdes' sale of his ownership interest in International Marine, the company's subsidiary entered into a Vessel Sales Agreement ("VSA") with Delta Towing, now known as FDT, LLC, ("Delta") for the purchase of two vessels for $4 million. The present case arises out of the breach of that agreement. Specifically, Delta Towing alleged that International Marine chartered the two vessels on multiple occasions in violation of a noncompetition clause in the VSA. Delta Towing further asserted that each separate breach of the VSA entitled it to $250,000 in liquidated damages from International Marine.

### B.     Procedural Background

In 2009, Delta brought an action against International in Texas state court for breach of the VSA. The forum selection clause in the VSA required that the parties resolve their dispute in this Court, thus the Texas suit was dismissed and International then brought the present action seeking a declaratory judgment that it had not breached the VSA and that the liquidated damages clause in the VSA was unenforceable.

United States District Judge A.J. McNamara initially was assigned the case, and in 2011 ruled that the liquidated damages clause was enforceable. He did not resolve the issues of damages. Following Judge McNamara's retirement, the case was assigned to this Section of the Court. In 2012, this Court denied a motion for reconsideration of Judge McNamara's order and found that the liquidated damages clause was valid. The Fifth Circuit affirmed, holding that the liquidated damages clause was enforceable. (Rec. Doc. 182 at 10).

On November 1, 2013, the Court ruled that the liability of Mr. Valdes for International's pre-closing liabilities was limited to 5%. (Rec. Doc. 281). The Court explained that the language of the Purchase Agreement and the Assumption Agreement indicate that the parties intended the 5% apportionment of liability at the time of sale.

2

After a December 2013 bench trial for the purposes of determining liability and damages, this Court issued a Findings of Fact & Conclusions of Law ("FFCL") on June 30, 2014, finding International liable for 33 breaches of contract. The Court ruled that, under the enforceable liquidated damages clause, International must pay Delta $8.25 million plus judicial interest. Thereafter, International filed a motion to alter or amend the FFCL, which the Court denied. On October 14, 2014, the Court issued a partial judgment under Rule 54(b) in favor of Delta. Although the Court has ruled on Mr. Valdes' share of liability, it has not yet fully resolved the issue of Mr. Valdes' liability, including how, or to whom, he must pay.

## II.  PRESENT MOTIONS

Presently before the Court are three motions: (1) International's motion for summary judgment, (Rec. Doc. 384); (2) Mr. Valdes's motion for leave to file an amended counterclaim in interpleader, (Rec. Doc. 395); and (3) Mr. Valdes's motion for partial summary judgment, (Rec. Doc. 397). Essentially, the three parties in this litigation ask for three different approaches to the issue of Mr. Valdes' indemnity: (1) International asks that Mr. Valdes pay International 5% of the $8.25 million judgment, plus attorneys' fees; (2) Delta asks that Mr. Valdes pay directly to Delta the 5% of the $8.25 million judgment; and (3) Mr. Valdes asks that the Court determine how much Mr. Valdes owes (i.e. 5% of what amount) and that the amount be placed in the registry of the Court. These motions will be addressed in turn.

### A.  International's motion for summary judgment

International moves for summary judgment against Mr. Valdes. (Rec. Doc. 384). International argues that there is no genuine issue of material fact on the remaining issues in this suit: (1) that Mr. Valdes owes to International 5% of the $8.25 million Delta Towing judgment, in addition to its share of attorneys' fees and costs awarded to Delta; (2) that Mr. Valdes owes to

3

International 5% of the costs of defending against Delta claims; and (3) that International is entitled to summary judgment on Mr. Valdes's counterclaim for attorneys' fees and that International should be awarded attorneys' fees as the "prevailing party" under the Purchase Agreement between Mr. Valdes and International.[1]

Mr. Valdes responds in opposition. (Rec. Doc. 406). First, he argues that although he owes 5% of International's obligation, it is not yet clear how much he owes. Specifically, Mr. Valdes argues that the Court must first address his argument for partial summary judgment on the issue of the enforceability of the liquidated damages clause. If Mr. Valdes is successful on his partial motion for summary judgment, he argues that he would be liable for 5% of Delta's *actual damages*, not 5% of the $8.25 million judgment. Second, Mr. Valdes argues that even if the Court were to order Mr. Valdes to pay now, the money must be put into the registry of the Court because two parties are making a direct claim to the money: International, in these proceedings, and Delta, in state court. Lastly, for the purposes of this motion, Mr. Valdes states that he does not contest International's "prevailing party" argument for the purposes of this motion; Mr. Valdes also states that he reserves the right to re-urge his request for attorneys' fees later in the litigation.

Delta responds. (Rec. Doc. 416). Delta argues that the Court need not grant International's motion for summary judgment because Mr. Valdes can be forced to pay Delta the 5% percent directly.[2] Delta explains that its recently filed writ of fieri facias, which the clerk of court has issued, entitles it to the rights and interests of International. Accordingly, Delta argues

---

[1] On Mr. Valdes' counterclaim for attorneys' fees, International argues that the parties waived "prevailing party" provision, which is part of the arbitration clause, by litigating here in this Court for over a year.
[2] Delta posits that the instant dispute remains in this suit because International would not consent to Mr. Valdes paying Delta the 5% directly.

that even if the Court were to grant International's motion for summary judgment, Delta would be entitled to the judgment from Mr. Valdes.

### B. Mr. Valdes's motion for leave to file an amended counterclaim in interpleader

Mr. Valdes moves for leave to file an amended counterclaim in interpleader against both International and Delta. (Rec. Doc. 395). Mr. Valdes asserts that Rule 22 affords him the right to interpleader because he is exposed to double or multiple liability on account of the litigation here and the lawsuit that Delta has filed against Mr. Valdes (among other defendants) in state court. Mr. Valdes asks that this Court allow his interpleader so that, first, the Court can determine how much Mr. Valdes owes (i.e. 5% of what amount); and, second, the Court can order that such amount be placed in the registry of the Court for International and Delta to make a claim upon the 5%. Mr. Valdes emphasizes that judicial economy should permit interpleader here.

International responds in opposition. (Rec. Doc. 408). International argues that the Court should not allow the claim in interpleader. International emphasizes that Mr. Valdes has been in this case for a year, yet waited until after the Court entered its $8.25 million judgment before making a claim for interpleader. International argues that Mr. Valdes has no excuse for such a lengthy delay in seeking to amend his counterclaim to permit interpleader. International also notes that it brought Mr. Valdes into this litigation under Rule 14(c), thus the action proceeded as if Delta had sued Mr. Valdes directly, and the Court already held a trial and entered a judgment on Delta's claims. International argues that it would suffer severe prejudice by permitting this amendment. International also argues that this Court's 54(b) judgment (in favor of Delta against International) prohibits the claims Delta makes against Mr. Valdes in state Court.

5

Delta responds in opposition to Mr. Valdes' motion for leave. (Rec. Doc. 413). Delta stresses that Mr. Valdes' requested relief essentially asks for an unnecessary stay of the state court proceedings. Moreover, Delta asserts that Mr. Valdes' claim in interpleader is unnecessary in light of Delta's recently obtained writ of fieri facias. According to Delta, now that the writ has issued, any judgment that this Court might award Mr. Valdes from International must be paid directly to Delta. Notably, Delta asserts that once Mr. Valdes pays Delta the 5% owed in these proceedings, Mr. Valdes will have a credit for any such payment, in the event Mr. Valdes is found further liable in state court. Thus, Delta states, Mr. Valdes is not at risk of paying multiple judgments. Delta also notes that its claims against Mr. Valdes in state court are substantively different than those here, as they are based on Mr. Valdes' solidary obligation to Delta.

Mr. Valdes replies, by leave of Court. He emphasizes that he did not delay in seeking to file his counterclaim in interpleader: he had no need to file such a motion until after International filed for summary judgment and Delta filed its state court suit. He also argues that the fact that International and Delta oppose his motion for different reasons highlights the need for interpleader.

### C. Mr. Valdes's motion for partial summary judgment

Mr. Valdes moves for partial summary judgment on the scope of his indemnity obligation. (Rec. Doc. 397). Mr. Valdes acknowledges that his liability is limited to 5% of International's pre-closing liability to Delta, as this Court has already acknowledged. However, Mr. Valdes argues that he has not yet had a chance to argue as to the enforceability of the liquidated damages clause[3] and that the Court should find, as a matter of law, that the liquidated damages clause is unenforceable. Specifically, Mr. Valdes asserts that the liquidated damages

---

[3] Mr. Valdes argues that because International did not implead him early enough in the suit to allow him the chance to argue as to the enforceability of the liquidated damages clause, the Court must now afford him that opportunity.

6

clause is unenforceable because it essentially allows for a choice of actual or stipulated damages, and various courts have held that such a choice renders a liquidated damages clause unenforceable. Mr. Valdes acknowledges that the clause does not explicitly allow for such a choice; rather, Mr. Valdes argues that the nature of the clause is such that Delta was able to selectively choose to pursue either actual or stipulated damages. Accordingly, Mr. Valdes argues that the Court should find the liquidated damages clause unenforceable and rule that his liability is limited to 5% of Delta's actual damages, which have yet to be proven.

International responds in opposition. (Rec. Doc. 409). International argues that Mr. Valdes never pled the affirmative defense of unenforceability in his answer, nor did he do so at trial. Moreover, International argues that Mr. Valdes, as an indemnitor, had notice of the suit sufficiently early such that he is bound by the Court's judgment rendered against the indemnitee, International.

Delta also responds in opposition to Mr. Valdes' motion for partial summary judgment. (Rec. Doc. 415). First, Delta argues that the law of the case doctrine precludes re-examining the enforceability of the liquidated damages clause. Second, Delta argues that issue preclusion bars Mr. Valdes' attempt to re-litigate the issue of enforceability of the clause. Finally, Delta argues that even if the Court were to reach the merits of Mr. Valdes' argument, the Court should again find the clause enforceable. Delta asserts that here, the clause provided for only one remedy: liquidated damages. Delta emphasizes that this Court, and the Fifth Circuit, explained that the non-compete requirements under the VSA made Delta's actual damages virtually impossible to quantify. Therefore, it is not an "optional" liquidated damages clause.

Mr. Valdes replies, by leave of Court. He argues that he has not waived any argument, that the law-of-the-case doctrine is inapplicable here, and that issue preclusion is similarly inapplicable.

## III. DISCUSSION

### A. Statement of Law

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the non-moving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant. *Id.* at 255.

**B.     Analysis**

The parties do not dispute that Mr. Valdes owes 5% in liability for the breach of contract. (*See, e.g.*, Rec. Doc. 406 at 3) ("Although Mr. Valdes owes 5% of International's obligations . . ."). Rather, the instant dispute comes down to two issues, effectively: (1) to what number the 5% must be applied; and (2) to which party the 5% must be paid.

**1.     Amount of Mr. Valdes' liability**

Turning to the amount of his liability, the Court must first address whether Mr. Valdes can now challenge the enforceability of the liquidated damages clause. Mr. Valdes makes several new arguments as to why the liquidated damages clause is unenforceable. However, Judge McNamara (on March 11, 2011), this Court (on February 13, 2012), and the Fifth Circuit (on January 8, 2013), have all examined the issue and held the clause to be enforceable. Even so, Mr. Valdes argues that he cannot be bound by the prior ruling because he was not yet a party to this litigation: International impleaded Mr. Valdes on June 26, 2013. (Rec. Doc. 211). International counters that although it did not implead Mr. Valdes until after the Fifth Circuit's ruling, Mr. Valdes had notice of the lawsuit no later than October 5, 2010 when he was deposed in this litigation.

*a. Res Judicata: Issue Preclusion*

The question is whether Mr. Valdes is bound under res judicata by the prior ruling on the issue. It is undisputed that Mr. Valdes was a nonparty at the time that the question of enforceability was litigated in this Court and in the Fifth Circuit. Generally, one is not bound by a judgment in a litigation in which he is not a party. *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991); *see also Taylor v. Sturgell*, 553 U.S. 880, 884 (2013). However, there are exceptions to this general rule, two of which are at issue here: pre-existing

9

substantive legal relationship and virtual representation. *See Taylor*, 553 U.S. at 893. Even though Mr. Valdes was not a party to the suit, the Court's prior determination is binding if there exists a "pre-existing substantive legal relationship" between Mr. Valdes and a bound party. *Taylor*, 553 U.S. at 894. The Supreme Court has stated that "[q]ualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Id.* Furthermore, the Court's prior determination is also binding if the interests of Mr. Valdes were "virtually represented" by a party. *Pollard v. Cockrell*, 578 F.2d 1002, 1008-09 (5th Cir. 1978); *see also Taylor*, 553 U.S. at 891 n.3, 896-901 (rejecting the D.C. Circuit's overly broad interpretation of the virtual representation doctrine, but approving of the Fifth Circuit's approach in *Pollard*). As explained by the Fifth Circuit:

> A person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his 'virtual representative.' . . . . Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues. In reviewing cases decided under the doctrine, we have described the types of relationships contemplated: "estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee." *Id.*

Both exceptions are applicable here, thus barring Mr. Valdes from asserting issue preclusion. First, the "pre-existing substantive legal relationship" exception applies. Prior to the time that enforceability was litigated, Mr. Valdes' relationship to International was strong: he was an owning member until 2009, at which time he became an indemnitor. These facts establish a pre-existing substantive legal relationship. This pre-existing legal relationship, in fact, is stronger and closer than some of those approved by the Supreme Court, such as bailee/bailor and assignee/assignor. *Taylor*, 553 U.S. at 894. The relationship here is more akin to that of preceding and succeeding owners of property, which is also a valid basis to apply res judicata to

a non-party. *Id.* The fact that the Supreme Court in *Taylor* did not specifically mention include the indemnitor/indemnitee relationship does not mean that it does not suffice for a finding of a pre-existing substantive legal relationship.

The virtual representation doctrine also applies here: the express legal relationship between International and Mr. Valdes, a co-owner of International Marine at the time of the VSA, is sufficient for a finding that Mr. Valdes is bound by prior litigation on the issue of enforceability. It is significant that Mr. Valdes was an owning member of International Marine at the time of the VSA and most of the breaches and that the 2009 Purchase Agreement and Assumption Agreement bound Mr. Valdes to assume 5% of International Marine's pre-closing liabilities. (Rec. Doc. 281). The binding legal relationship between International and Mr. Valdes contemplated accountability between International and Mr. Valdes, should Mr. Valdes seek to raise an identical legal issue in subsequent litigation, as he attempts to do now. *Pollard*, 578 F.2d at 1009. Moreover, the legal relationship between International and Mr. Valdes is such that their interests were completely aligned with respect to the enforceability of the liquidated damages clause. A number of facts here particularly demonstrate this alignment: (1) Mr. Valdes was an owning member of International Marine at the time of the VSA; (2) Mr. Valdes was an owning member of International Marine when the breaches occurred; (3) Mr. Valdes expressly agreed to assume a portion of these pre-closing liabilities; (4) both parties have the same interest in vigorously contesting, generally, liability to Delta, and, specifically, the applicability of the liquidated damages clause of the VSA; (5) there is no evidence that Mr. Valdes' interests were unprotected at the time that enforceability was litigated. Indeed, no party has made any argument as to how these interests were not aligned. The circumstances here are akin to the other contemplated relationships in *Pollard*. 578 F.2d at 1009. The Court thus finds that Mr. Valdes'

identical interests in contesting the enforceability of the liquidated damages clause were virtually represented, thus he is barred from re-litigating the issue.

Although Mr. Valdes argues that that he was not "vouched in"[4] as an indemnitor, thus cannot be bound by res judicata, this argument is not persuasive. Mr. Valdes asserts that the Fifth Circuit *requires* vouching before ever applying res judicata to an indemnitor such as Mr. Valdes who was previously a non-party. In support of this position, he cites *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131 (5th Cir. 1991). *Universal*, however, does not require vouching before applying res judicata to an indemnitor. Indeed, the Fifth Circuit in *Universal* noted that that "[v]ouching is reserved primarily for cases in which the vouchee cannot be impleaded because the vouchee is not subject to personal jurisdiction." *Id.* at 1139. Here, Mr. Valdes was able to be impleaded, and eventually was impleaded. It is immaterial, then, that Mr. Valdes was not vouched in to the litigation because that procedural concept is inapplicable to his situation. The applicable exceptions to res judicata, as explained in *Taylor*, govern.

### b. Enforceability of the Liquidated Damages Clause

Mr. Valdes makes several new arguments as to why the liquidated damages clause is unenforceable. Even if the Court were to reach the merits of these arguments, the Court would nonetheless conclude that the clause is enforceable. Mr. Valdes' position is that although the clause does not explicitly allow for an impermissible choice between actual or liquidated damages, the nature of the clause is such that Delta was effectively able to choose between

---

[4] "Vouching is a common-law device whereby a defendant notifies the "vouchee," a nonparty alleged indemnitor, (a) of the pendency of the suit against him; (b) that if liability is found, the defendant will look to the vouchee for indemnity; (c) that the notice constitutes a formal tender of the right to defend the action; and (d) that if the vouchee refuses to defend, it will be bound in any subsequent litigation between them to the factual determinations necessary to the original judgment." *Universal*, 946 F.2d at 1138 (internal citations omitted).

pursuing either alternative.[5] That is, according to Mr. Valdes, because Delta was able to choose which to prove, it effectively had an option, and this choice violates the tenets of a valid liquidated damages clause.

Mr. Valdes cites a variety of state case law and secondary sources for the proposition that, regardless of whether the clause served as an impressible penalty, a liquidated damages clause must be for a "sum certain." *See, e.g.*, *Grossinger Motorcorp, Inc. v. Am. Nat'l Bank & Trust Co.*, 607 N.E. 2d 1337, 1345-48 (Ill. App. Ct. 1992). Although there is no Fifth Circuit case on point, the doctrine seems to stem logically from Section 356 of the Restatement (Second) of Contract which requires that a proper liquidated damages clause "fix[]" a set amount of the anticipated damage. Several of the courts cited by Mr. Valdes invalidated optional liquidated damages clauses which had set a minimum value of anticipated damages and permit the plaintiff to prove actual damages at a higher value. *See, e.g.*, *Stock Shop, Inc. v. Bozell & Jacobs, Inc.,* 481 N.Y.S.2d 269, 271 (Sup. Ct. 1984) (invalidating a liquidated damages clause that set "reasonable minimum value" of $1,500 per breach yet did not attempt to reasonably anticipate damages).

The problem with this argument, however, is that the liquidated damages clause at issue here does not explicitly allow for an option to pursue actual or anticipated damages. Here, the liquidated damages provides as a violation "the *greater of* (i) the sum of Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) per incident or occurrence *or* (ii) if applicable the gross amount of revenue earned in violation of such covenant and agreement with respect of the incident or occurrence in question . . . . It is understood that *the resultant damages of any such breach of the covenants and agreements contained in paragraph 11F would be difficult to*

---

[5] International did not previously make this "choice" argument.

*ascertain with certainty but that the amount stipulated herein is a good faith reasonable estimate of the damages Seller would suffer.*" See *International Marine, LLC v. Delta Towing LLC*, 704 F.3d 350, 353 (5th Cir. 2013) (emphasis added). This clause indicates no option. Rather, resolution of damages simply involves a mathematical formula: a breach automatically triggers liquidated damages of $250,000 per breach *unless* the gross revenue earned for the violation is greater than $250,000. The Fifth Circuit and this Court have repeatedly explained that the plain language of the clause is accurate: the $250,000 sum exists because actual damages are difficult to ascertain here. Particularly where the clause sets a good faith estimate of the anticipated damages, the automatic nature of the liquidated damages clause here is distinguishable from clauses such as that invalidated in *Stock Shop*, 481 N.Y.S.2d at 271, which set a floor for damages that was not tied to the anticipated damages, and allowed the plaintiff to elect whether to prove actual damages.

Mr. Valdes counters, pointing to the language out of Delta's state court complaint to show that Delta impermissibly was able to choose. There, Delta alleged that for one of the thirty-three breaches, Delta believed the damages were in the amount of $591,000, thus it should be awarded $591,000, not $250,000 for that violation. *See* (Rec. Doc. 391-1 at n. 36). In its amended state court complaint, however, Delta no longer seeks $591,000 for that breach, but rather now seeks $250,000 for *every* breach. Mr. Valdes points to this fact as an indicator that the clause effectively allows Delta to choose whether it endeavors to prove anticipated or actual damages. Even so, this argument is not convincing. Because of the difficulty in proving actual damages here, it is reasonable that Delta would, in good faith, abandon its attempt to prove actual damages, which might require costly litigation. Such a strategic litigation decision does not alone render the clause unenforceable.

### c. Mr. Valdes' liability for fees and costs

Mr. Valdes is thus liable for 5% of the $8.25 million judgment, which amounts to $412,500, plus judicial interest (on that 5%) at the rate of 5.5% from February 20, 2009. Additionally, Mr. Valdes' apportionment of liability includes fees and costs. Notably, the Purchase Agreement provides that Mr. Valdes is "severally" and "not jointly" liable for "all Losses arising out of or relating to any liability or obligation" of International Marine. (Rec. Doc. 241-2 at 45; *see* Rec. Doc. 281 at 7). "Losses," as defined in the Purchase Agreement, include costs and expenses. (Rec. Doc. 241-2 at 43). Thus, Mr. Valdes must also pay 5% of International's obligation to pay fees (including attorneys' fees) and costs to Delta.[6] Finally, the Court will not award additional attorneys' fees based on the "prevailing party" provision in the Purchase Agreement because Mr. Valdes does not contest the matter at this time, (Rec. Doc. 406 at 7), and International views the issue as waived, (Rec. Doc. 384).

### 2. Possessor of Mr. Valdes' indemnity obligation

Having established how much Mr. Valdes owes, the Court must now determine which party he must pay. To answer this question, the Court must assess whether it should grant Mr. Valdes leave to file an amended counterclaim for interpleader. Under Federal Rule of Civil Procedure 22, interpleader is proper when a party may be exposed to "double or multiply liability." Mr. Valdes asserts that an interpleader is necessary to protect him from double liability on the same obligation on account of (1) International's claim against him in this litigation and (2) Delta's claim against him in state court. Mr. Valdes requests interpleader as a mechanism by which he may put his apportionment of damages into the registry of the Court. To determine the

---

[6] The Magistrate Judge recently ruled on the issue of fees and costs that International owes to Delta. (Rec. Doc. 429).

necessity of interpleader here, the Court must examine the means by which Mr. Valdes was

impleaded into this litigation under Rule 14(c).

> *a.  Rule 14(c) Tender*

When the Admiralty Rules merged with the Federal Rules of Civil Procedure in 1966, the

drafters created Federal Rule of Civil Procedure 14(c) as a mechanism to maintain traditional

admiralty rules of impleader. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL.,

FEDERAL PRACTICE & PROCEDURE § 1465 (3d ed. 2004). Accordingly, the Fifth Circuit requires

that under Rule 14(c), the third-party plaintiff  "(1) [] asserts an action sounding in admiralty or

maritime, (2) that arises out of the same transaction, occurrence, or series of transactions or

occurrences as the plaintiff's original claim, (3) over which the district court has jurisdiction."

*Ambraco, Inc. v. Bossclip B. V.,* 570 F.3d 233, 243 (5th Cir.2009) (internal quotations omitted);

*see also McDonough Marine Service v. Royal Ins. Co.,* 2001 WL 576190, *4 (E.D.La. May 25,

2001) ("[T]he third-party action [under Rule 14(c) ] must be cognizable in admiralty"). Rule

14(c) provides:

> (1) Scope of Interpleader. If a plaintiff asserts an admiralty or maritime claim
> under Rule 9(h), the defendant or a person who asserts a right under Supplemental
> Rule C(6)(a)(I) may, as a third-party plaintiff, bring in a third-party defendant
> who may be wholly or partly liable—either to the plaintiff or to the third-party
> plaintiff—for remedy over, contribution, or otherwise on account of the same
> transaction, occurrence, or series of transactions or occurrences.
>
> (2) Defending Against a Demand for Judgment for the Plaintiff. The third-party
> plaintiff may demand judgment in the plaintiff's favor against the third-party
> defendant. In that event, the third-party defendant must defend under Rule 12
> against the plaintiff's claim as well as the third-party plaintiff's claim; and the
> action proceeds as if the plaintiff had sued both the third-party defendant and the
> third-party plaintiff.

FED. R. CIV. P. 14(c). Rule 14(c) "permits a defendant to implead a third-party defendant

for two purposes: (1) to seek contribution or indemnification from the third-party

defendant, and (2) to tender the third-party defendant to the plaintiff." *Ambraco*, 570 F.3d at 242. When the third-party plaintiff invokes the 14(c) tender option, the plain language of Rule 14(c)(2) requires that the tender of the third-party defendant to the plaintiff is automatic. In pertinent part, Rule 14(c)(2) provides that if the third-party plaintiff "demand[s] judgment in the plaintiff's favor, then the third-party defendant *must* defend against both the plaintiff's claim and against the third-party plaintiff's claim. FED. R. CIV. P. 14(c)(2) (emphasis added). Under such circumstances, "the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff." *Id.*

This case involves a maritime breach of contract, in which both International and Delta invoked Rule 9(h) on their respective claims. (*See* Rec. Docs. 1, 14, 336). On July 26, 2013, International, acting as a third-party plaintiff with respect to the counterclaim of Delta, filed a third-party complaint against Mr. Valdes. In its third-party complaint, International invoked 14(c) to tender Mr. Valdes to Delta, alleging that Mr. Valdes "may be liable to either Delta Towing or [International] on account of the same transaction or occurrence – namely, the alleged breaches of the Vessel Sales Agreement and Parent Company Guarantee." (Rec. Doc. 211). In its third-party complaint, International "demand[ed] judgment in Delta Towing's favor against Williams, Steele, Valdes, and WMV to the extent Delta Towing is entitled to judgment . . ." *See* FED. R. CIV. P. 14(c)(2). The language in International's third-party complaint, along with the text of Rule 14(c), indicate that International, acting in its capacity as a third-party plaintiff, properly invoked 14(c) to tender Mr. Valdes as a third-party defendant to Delta, the plaintiff on its counterclaim on the maritime breach of contract.

Notably, although the *scope* of Mr. Valdes' liability is governed by Delaware law, (Rec. Doc. 281), the *substance* of his liability is governed by maritime law. Mr. Valdes' liability is

17

based in the same transaction or occurrence as that of International – the breach of the VSA. The third-party complaint itself seeks damages against Mr. Valdes "on account of the same transaction or occurrence – namely, the alleged breaches of the Vessel Sales Agreement and Parent Company Guarantee." (Rec. Doc. 211). As this Court has explained, the VSA breaches are governed by maritime law. (Rec. Docs. 13, 336). Because the parties properly invoked maritime jurisdiction under Rule 9(h), the tender is also governed by maritime law.

Because Mr. Valdes was properly tendered to Delta, there is no need for an interpleader here. Mr. Valdes' concern of double liability is largely premised on his worry that this Court would order judgment against him on the 5% in favor of *International*. However, in light of the valid 14(c) tender, in which International "demand[ed] judgment in Delta Towing's favor against . . . Valdes . . . ", interpleader is unnecessary for the Court to rule that Mr. Valdes must pay Delta directly for his 5% liability. Moreover, Delta has assured both Mr. Valdes and this Court that should Delta be successful in its state court claim for solidary liability against Mr. Valdes, Delta will afford Mr. Valdes a credit for the 5% that Mr. Valdes will have paid to Delta. The Court will give credence to this assurance of Delta and will order herein that Mr. Valdes pay the 5% directly to Delta. To protect against double liability, in the event that Delta is successful against Mr. Valdes in state court, Delta shall give Mr. Valdes a credit for the 5% that he will have paid by that point. Thus, interpleader is unnecessary. All issues in this litigation are now resolved.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that International's motion for summary judgment is **GRANTED IN PART**, insomuch as there is no genuine dispute of material fact that Mr. Valdes owes 5% of the $8.25 million judgment, plus judicial interest, fees, and costs, and the motion is **OTHERWISE DENIED**;

**IT IS FURTHER ORDERED** that Mr. Valdes pay his 5% appointment of liability directly to Delta;

**IT IS FURTHER ORDERED** that Delta **SHALL** give Mr. Valdes a credit for this payment in the event Delta is successful against Mr. Valdes in the state court suit;

**IT IS FURTHER ORDERED** that Mr. Valdes' motion for leave to file an amended counterclaim in interpleader is **DENIED**;

**IT IS FURTHER ORDERED** that Mr. Valdes' motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, this 18th day of December, 2014.

_____
UNITED STATES DISTRICT JUDGE