UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

INTERNATIONAL MARINE, L.L.C. ET AL.                CIVIL ACTION

VERSUS                                             NO. 10-44

FDT, LLC, f/k/a DELTA TOWING, L.L.C.               SECTION "L" (2)

**ORDER AND REASONS ON MOTION**

This a maritime contract case in which the court has entered a judgment in favor of FDT, L.L.C., f/k/a Delta Towing, L.L.C. ("Delta"), against affiliated corporate entities, International Marine, L.L.C., and International Offshore Services, L.L.C. (jointly "International"), in the principal amount of $8.25 million. The total amount due to Delta from the two judgment creditors rises to about $12 million when previously awarded interest, attorney's fees and costs are added. International has failed to pay the judgment.

Delta has commenced judgment enforcement efforts, including a judgment debtor examination and document discovery pursuant to the court's order. Record Doc. No. 390. Delta's Motion for Contempt and Sanctions, Record Doc. No. 464, for International's alleged failure to comply with that order is currently pending before me. Plaintiff filed a timely opposition memorandum. Record Doc. No. 468. Defendant was granted leave to file a reply. Record Doc. Nos. 470, 471, 472.

Although its title refers exclusively to contempt and sanctions, Delta's motion also seeks other relief in the form of additional discovery in aid of judgment execution, including production of additional materials responsive to the order, compelled

deposition testimony from additional witnesses and an award of attorney's fees and costs, payable by both the judgment debtors and their lawyers.

Having considered the record, the applicable law and the written submissions of counsel, **IT IS ORDERED** that the motion is GRANTED IN PART AND DENIED IN PART for the following reasons.

Fed. R. Civ. P. 69(a) provides that "[t]he procedure on [judgment] execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located . . . . In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record <u>may obtain discovery from any person</u> – including the judgment debtor – as provided in these [federal] rules [of civil procedure] or of the state where the court is located."  (Emphasis added).

The judgment debtor examination is a judgment enforcement procedure authorized by La. Code Civ. P. arts. 2451-2456.  Specifically, "[i]n aid of execution the judgment creditor may examine the judgment debtor, his books, papers, or documents, upon any matter relating to his property . . . . [T]he judgment creditor <u>may also examine any person</u> upon any matter relating to the judgment debtor's property . . . ."  La. Code Civ. P. art. 2451 (emphasis added).  As Delta did in this case, "[o]n ex parte written motion of the judgment creditor, personally or through his attorney, the court shall order the judgment debtor to appear in court for examination at a time fixed by the court, . . . and

2

to produce any books, papers, and other documents relating to the judgment debtor's property described in the motion." <u>Id.</u> art. 2453. In addition, "[c]ourt costs in connection with the examination <u>shall</u> be taxed <u>against the judgment debtor</u> . . . . If . . . the judgment debtor <u>refuses</u> to appear for the examination or to produce his books, papers, or other documents when ordered to do so, or if he <u>refuses</u> to answer any question held pertinent by the court, the judgment debtor may be punished for contempt." <u>Id.</u> arts. 2455, 2456 (emphasis added).

As the leading commentators on federal procedure have outlined, in federal judgment enforcement proceedings like those in this case,

> [a] judgment creditor may obtain discovery <u>from any person, including the judgment debtor</u>, in aid of the judgment or execution. . . . The judgment creditor is allowed discovery to find out about assets on which execution can issue <u>or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution</u>. . . . As the Supreme Court has said [in <u>Republic of Argentina v. NML Capital, Ltd.</u>, 134 S. Ct. 2250, 2254 (2014)], "[t]he rules governing discovery are quite perimissive [sic]." A judgment creditor may use the discovery devices provided in Civil Rules 26 to 37 <u>or</u> may obtain discovery in the manner provided by the practice of the state in which the district court is held. The scope of examination is <u>very broad</u>, as it must be if the procedure is to be of any value. Ordinarily third persons can be examined only about the assets of the judgment debtor . . . although <u>probing questioning is allowed with regard to third parties with close ties to the judgment debtor.</u>

12 C. Wright, A. Miller, M. Kane, R. Marcus & A. Steinman, <u>Federal Practice and Procedure</u> § 3014, text accompanying nn. 1-8 (and cases cited therein) (2d ed. 1997), on Westlaw at FPP § 3014 (updated Sept. 2014) (emphasis added) (hereinafter "<u>Wright & Miller</u>"). In federal judgement enforcement proceedings, "as is customary, the

3

examination is made pursuant to [Federal] Civil Rules 26 to 37 rather than state practice." Id., text accompanying n.20 (and cases cited therein).

> As to contempt, the United States Court of Appeals for the Fifth Circuit has stated that
>
> [f]ederal courts have the inherent power to punish for contempt. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). The availability of that power promotes "the due and orderly administration of justice" and safeguards the court's authority. Id. (quoting Cooke v. United States, 267 U.S. 517, 539 (1925)). "Because inherent powers are shielded from direct democratic controls," [however,] the Supreme Court instructs that "they must be <u>exercised with restraint</u> and discretion." Id. Rather than stemming from a "broad reservoir," they are "implied power[s,] squeezed from the need to make the court function." Crowe v. Smith, 151 F.3d 217, 226 (5th Cir. 1998).

Hornbeck Offshore Servs., L.L.C. v. Salazar, 713 F.3d 787, 792 (5th Cir. 2013) (emphasis added).

> The movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court order. In the contempt context, "clear and convincing evidence" is that 'weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to truth of the allegations sought to be established, evidence so clear, direct, weighty and convincing as to enable [the] fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."

Moawad v. Childs, 253 F.3d 700, 2001 WL 498491, at *1 (5th Cir. Apr. 9, 2001) (quoting Travelhost, Inc. v. Blandford, 68 F.3d 958, 961 (5th Cir. 1995)); accord Hornbeck Offshore Servs., L.L.C. v. Salazar, 701 F.3d 810, 815 (5th Cir. 2012); Am. Serv. Mktg. Corp. v. Bushnell, No. 09-3097, 2009 WL 1870887, at *2 (E.D. La. June 25, 2009) (Engelhardt, J.).

4

Applying the foregoing standards, the motion is denied insofar as it seeks either a contempt citation or monetary sanctions at this time. The draconian sanction of a contempt citation is not currently warranted where, as here, the judgment debtors have not exhibited stubborn resistance to the court's authority and orders or intentional refusal either to answer examination questions or produce requested materials. Although International's response to the court's order was deficient as outlined below, I attribute – at least at this time – those deficiencies to the judgment debtors' present operational state, including the lack of any direct employees or administrative staff and apparently depleted resources, coupled with their chief executive officer's relatively recent assignment to that position and less than fully conscientious effort, rather than to intentional defiance of the court's order. The judgment debtors have produced voluminous business records and their current chief executive officer, Danny J. Frich, for two days of testimony responsive to Delta's judgment enforcement efforts, all of which I consider sufficient to avoid imposition of a contempt citation at this time.

The request for sanctions in the form of an award of attorney's fees and costs is denied because such an award would be duplicative of amounts Delta is already entitled to receive. In his findings and conclusions making the substantive award in Delta's favor, Judge Fallon has already held, "Under the terms of the parent company guarantee, International Offshore's liability includes Delta's costs and expenses, including attorneys' fees, in seeking to enforce International Marine's obligations." Record Doc.

5

No. 336 at p. 22 n.1. In addition, Louisiana law applicable through the provisions of Fed. R. Civ. P. 69(a)(1) provides that "[c]ourt costs in connection with the [judgment debtor] examination shall be taxed against the judgment debtor." La. Code Civ. P. art. 2455. Unlike Fed. R. Civ. P. 37(b)(2)(C), neither La. Code Civ. P. articles 2455 and 2456 nor the contractual provision upon which the court's judgment based its award of attorney's fees and costs provide for such an award against the debtors' counsel. Attorney's fees and taxable court costs known through the date of application have already been assessed as part of the court's judgment. Delta may move to amend the judgment in particular amounts of attorney's fees and taxable costs as appropriate.

On the other hand, the motion is granted insofar as it requests an order compelling further compliance with the court's order in the form of additional testimony and production in aid of Delta's judgment enforcement effort. The motion papers, especially the lengthy two-volume transcript of the judgment debtor examination, Record Doc. Nos. 464-2 and 464-3, establish clear deficiencies in the response of the judgment debtors to the court's order, both insofar as the order required testimony and the production of responsive materials.

For example, although International's current chief executive officer was an appropriate person to designate to appear on its behalf, at least as a <u>start</u> to the judgment enforcement and related discovery process, his testimony was replete with examples of woefully insufficient efforts to locate and provide materials responsive to the production

order and lack of knowledge of pertinent information. These deficiencies may be attributable, at least in part, to the broad scope of the testimony and production order and the fact that Frich's real employer is Platinum Equity Advisors ("Platinum"); that he became International's chief executive officer only about nine months ago; and that International now appears to have been reduced to a shell that "doesn't have any employees" and whose "assets have been sold." Record Doc. No. 464-2 at pp. 9, 11, 22; Record Doc. No. 464-3 at pp. 15-16.

Frich's testimony is replete with "I don't know," "I'm not sure" and similar answers establishing lack of knowledge as to questions that were not only pertinent to the kind of broad-sweeping examination that the sources cited above hold is appropriate to judgment enforcement proceedings, but also to simple ministerial matters like the location and method of storing documents and electronically stored communications and information and the efforts that were made to track down responsive materials. See, e.g., Record Doc. No. 464-2 at pp. 14-16, 24, 27, 30, 35, 40, 41, 65-66, 69, 73, 75, 93, 102-03, 123, 127-28, 133, 134, 137-38, 143, 146, 148, 153, 155-57 ("Q. You didn't make any effort to go into that storage facility and look through those boxes? A. No."), 179, 180; Record Doc. No. 464-3 at pp. 26, 51-53, 63-65, 67, 70-71, 73-74 ("Q. Did you look for any written agreements between International, Platinum Equity Advisors regarding an agreement to any advisory fee amounts per year, or per month, other than what is stated here as the max amount? A. I did not."), 75, 86, 104, 109, 113, 121, 124-25, 143-44,

147-48, 150-51, 163 ("A. There were documents related to different topics at IOS.  Q: I am talking about E-mails.  A. There were E-mails, different topics of IOS.  Q. But you all didn't produce any of those?  A. No."),165-66, 188, 200-02, 214-15.

Frich's testimony and the materials produced to date have justifiably fueled Delta's suspicions that the judgment debtors and their corporate affiliates, successors and individual officers and employees functioning in dual and intertwining capacities for related entities have engaged in corporate and financial web-spinning, which warrants both pursuit of the remedies currently being sought in state court, Record Doc. No. 468-1, and further judgment enforcement discovery proceedings in this case.

For example, Frich himself is actually employed and paid by Platinum and is "not compensated as CEO of [International]," a position he apparently occupies because Platinum directs and pays him to do so.  Record Doc. No. 464-2 at pp. 9, 77.  Frich testified that some pertinent documents responsive to the court's order had to be "requested through the accounting people at Platinum Equity Advisors," apparently because those materials were in the actual possession of Platinum, not International.  Record Doc. No. 464-2 at pp. 43-44.  Frich identified Ferry Holding Corp. ("Ferry") as International's majority owner; appeared to concede that Ferry is the parent of Platinum; and confirmed that individuals who are or were employed by or members or principals of Platinum, Ferry and International have held positions or offices in all three affiliated entities.  Record Doc. No. 464-3 at pp. 19, 22, 43-44.  Frich testified that Eva Kalawski,

8

is all of the following: general counsel of Platinum; the person to whom International's counsel of record report about this case; most knowledgeable about the corporate structure and personnel of International's related affiliates, Record Doc. No. 464-2 at pp. 16-19, 73-74; "sole manager" of International; the person with whom Frich consulted about International's judgment debtor examination; a "Platinum Manager" who has executed documents as executive vice president, general counsel and secretary of Platinum; and the person who also agreed to and signed on behalf of Ferry a "payoff letter" sent to Ferry by Mary Ann Sigler, who was acting for International. Record Doc. No. 464-3 at pp. 12, 31-32, 38, 43-49, 58, 77, 153.

Frich identified Mary Ann Sigler as both a vice president of International and the chief financial officer of Platinum who also signed a purchase agreement on behalf of Ferry that resulted in her becoming an officer of International. Id. at pp. 77-78, 85-86, 92, 119-20. He identified Stephen Zollo as both a vice president of International and "a principal at Platinum Equity Advisors." Record Doc. No. 464-3 at p. 59-60, 78. When asked "[w]ho affiliated with International might have more information or knowledge about" Ferry having been put on notice of Delta's claims against International in this case, Frich testified, "Possibly Eva Kalawski." Id. at p. 130.

Given this record, I find that Kalawski, Siglar and Zollo are "third parties with close ties to the judgment debtor" as to whom "probing questioning" should be allowed. Wright & Miller, text accompanying n.8 (and cases cited therein). Thus, the motion is

9

granted in part insofar as it seeks an order compelling further compliance with the court's order as follows:

**IT IS ORDERED** that International, through its chief executive officer Danny J. Frich must, no later than **June 12, 2015**:

(1) Provide counsel for Delta with full and complete written answers, sworn under oath by himself individually and on behalf of International, in the manner required by Fed. R. Civ. P. 33(b), to each and every question he was asked during both days of the judgment debtor examination to which he responded "I don't know," "I'm not sure" and/or similar expressions of lack of knowledge. If Frich has no personal knowledge responsive to such questions, he must conduct whatever research of records or interviews of persons with knowledge necessary to obtain and provide answers. Each and every written answer must also clearly identify (a) by name, address, employer and title all persons from whom information responsive to that question has been obtained, and/or (b) by date, title, author(s) and recipient(s) all documents or electronically stored or generated data or communications from which responsive information has been obtained.

(2)(A) Conduct a complete search for and inspection of all hard document storage depositories, computers, servers and other electronic devices or storage facilities that might contain or store hard documents and/or electronically stored information, data, communications or other materials, including specifically but not limited to emails, responsive to the court's judgment debtor examination order; (B) provide counsel for

Delta with a sworn affidavit fully describing his search efforts and/or the efforts of any person he directs to assist him and listing all such places by specific location address and type of storage facility; and (C) produce to Delta's counsel in a reasonably useable form or forms all additional located materials responsive to the court's production order but not previously produced, organized and labeled to correspond to the numbered categories in the production order.

(3) Provide Delta's counsel with available dates on which International must produce Eva Kalawski, Mary Ann Siglar and Stephen Zollo to be deposed, at a location in the Eastern District of Louisiana to be mutually agreed upon by counsel and at International's expense, on all matters relevant to judgment enforcement. These depositions must be scheduled and conducted on dates no earlier than 30 days <u>after</u> the production of additional materials ordered above and no later than **August 21, 2015**.

The motion is denied insofar as it seeks an order compelling additional testimony from other persons or entities in furtherance of completion of the court-ordered judgment debtor examination and associated production of materials at this time. If Delta determines that it requires additional discovery in aid of its judgment enforcement efforts, it is encouraged to do so using the tools available through Fed. R. Civ. P. 26

through 37 and 45, rather than through further use of the Louisiana judgment debtor examination articles.

New Orleans, Louisiana, this \_\_\_\_16th\_\_\_\_ day of April, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

CLERK TO NOTIFY:
HON. ELDON FALLON